UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSIE MARTINEZ,

        Plaintiff,

v.

RED LOBSTER HOSPITALITY LLC,
A Florida Corporation,

        Defendant

Case No.

Hon.
United States District Judge

Magistrate Judge

---

Cassie Martinez
20245 Sorrento
Detroit, MI 48235
734-334-8771
Plaintiff – *Pro se*
By: Law Office of Barbara A. Patek.
P.L.C. (Limited Appearance,
Pursuant to Court Order)
Barbara A. Patek (P34666)
27 E. Flint Street, Suite 2
Lake Orion, MI 48326
(313-410-1979- cell)
pateklaw@gmail.com
In her Capacity as Director
Federal Pro Se Legal Assistance Clinic
proseclinic@udmercy.edu

---

# COMPLAINT AND JURY DEMAND[1]

---

[1] This complaint and jury demand were drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). They were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance

Plaintiff, Cassie Martinez, *pro se*, states the following for her complaint against Defendant:

**JURISDICTION, VENUE & PARTIES**

1. Plaintiff, Cassie Martinez ("Ms. Martinez"), is an individual who resides in Detroit, Wayne County, Michigan.

2. Defendant Red Lobster Hospitality, LLC ("Defendant" or "Red Lobster") is a Florida corporation that conducts business in Oakland County, Michigan at 27760 Novi Road, Novi, Michigan 48377.

3. The violations of Title VII of the Civil Rights Act of 1964 and violation of Michigan Whistleblowers Protection Act alleged herein occurred in the Eastern District of Michigan.

4. This action arises under 42 U.S.C. 2000e *et seq.*, and jurisdiction of this Court is proper under 28 USC 1331. The court may also exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367 to address the state-law claims described in the complaint.

5. Venue over this controversy is based on 28 U.S.C. §1391(d). Defendant operates the restaurant where Plaintiff was employed in this judicial district within

---

Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690

the meaning of 28 U.S.C. §1391(c) and, accordingly, venue lies in this judicial district.

6. This lawsuit is being filed pursuant to this Court's March 23, 2020 Order, E.D. Mich. Case No. 2:20-md-50441, Doc. No. 2, permitting the Federal Pro Se Legal Assistance Clinic to file on behalf of certain, qualified pro se litigants. See **Exhibit 1**. Ms. Martinez is a qualified pro se litigant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Prior to the filing of this action, Ms. Martinez filed a timely written charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC").

8. On January 7, 2020, the EEOC issued a determination closing the charge (471-2019-04784) and extending Ms. Martinez a notice of right to sue within 90 days.

9. This lawsuit was filed within 90 days of Ms. Martinez's receipt of the right-to-sue letter issued by the EEOC. See attached Dismissal and Notice of Suit Rights, **Exhibit 2**, dated January 7, 2020.

## FACTUAL ALLEGATIONS

10. Ms. Martinez began working for Defendant as a server in June 2018.

11. Throughout her employment, Ms. Martinez was subjected to severe and pervasive sexual and racial harassment from her coworkers. After reporting

3

harassment, she was treated differently, retaliated against for reporting the harassment and embarrassment. The retaliation caused her physical and emotional injury as well as economic injury.

12. In early September 2018 Ms. Martinez called 1-800-762-5637, the Defendant's Reporting Hotline. Ms. Martinez also spoke with Joe Dahlke, Director of Operations for Defendant ("Dahlke"). Ms. Martinez reported sexual harassment by coworker Joe and her general manager, Jason ("Jason"), who on multiple occasions touched her on her wrist and buttock.

13. During the September 2018 call Ms. Martinez also reported that her coworkers engaged in open conversations about sex.

14. Sometime after the September 2018 call to the 1-800 number Ms. Martinez's coworker Joe apologized for touching her.

15. On occasion, Ms. Martinez would bend over to get a breadbasket, and male coworkers would stand near her; their private parts facing her.

16. On April 4, 2019, Jason was working in the food preparation area, "the window". He placed Ms. Martinez's tray in the window, which functions to continuously warm food. Ms. Martinez was used to trays reaching 80° temperatures. However, Jason sat Ms. Martinez's trays in the window before food was added to them resulting in the trays exceeding the expected temperature; instead reaching temperatures near 120°.

17. As a result of Jason's actions, Ms. Martinez experienced burns on the palms of her hands.

18. On April 5, 2019, as a result of medical treatment necessitated by the burns on her hands, Ms. Martinez submitted Worker's Compensation paperwork to coworker/ manager, Kimberly Hubent ("Kimberly").

19. On April 7, 2019, Ms. Martinez followed up with Jason and Kimberly about her Worker's Compensation forms. Kimberly told Ms. Martinez the papers were left on Jason's desk. Jason told Ms. Martinez he did not get the forms.

20. On the night of April 7, 2019, most of Ms. Martinez's co-workers made $100.00 or more in wages, but she only made $46.61 because very few guests were seated in her section.

21. On April 11, 2019, Kimberly checked Ms. Martinez out, and then asked her to clean the kickboards and chairs by spraying and wiping them off.

22. On April 12, 2019, Kimberly checked Ms. Martinez out. Kimberly told Ms. Martinez, in front of a group of their coworkers, to reclean the kickboards and for Ms. Martinez to clean the kickboards with her fingernails. Ms. Martinez refused to use her fingernails. Kimberly replied, "Let's go to the office."

23. On August 26, 2019 Ms. Martinez's coworker Joey, a host, while cleaning a wall near where Ms. Martinez was checking-in with her co-worker

manager Robert, continued to bump into her buttock. She said aloud, "Stop touching me." Robert said nothing and walked away.

24. At the end of the shift on August 26, 2019, Robert told Ms. Martinez that he'd spoken with Joey. She told Robert she appreciated that he addressed it.

25. On August 31, 2019, Ms. Martinez texted Dahlke to report that she was not assigned many tables and the lack of assignments affected her earning potential as a server.

26. On September 7, 2019, Dahlke responded to Ms. Martinez's text message that he would email her a blank Red Lobster Statement form.

27. Ms. Martinez and Dahlke communicated over the next couple days, but as of September 10, 2019, Dahlke had not sent Ms. Martinez the Statement form.

28. On September 11, 2019 (and on occasion prior), backhouse prep cook, Mark("Mark) followed Ms. Martinez to the employee restroom and stared at her when she came out of the restroom. When Ms. Martinez walked into the cooler, Mark followed and stood in front of the door preventing Ms. Martinez from immediately exiting.

29. On September 12, 2019, Ms. Martinez texted Dahlke to report Mark's actions. Mr. Dahlke responded to Ms. Martinez, "I will look into that as well. Employee Relations has begun the investigations this morning and will reach out when needed."

6

30. On September 19, 2019, Ms. Martinez was assigned three sections – 18, 19, and 35. She earned $72.51.

31. On September 22, 2019, Manager Robert scheduled Ms. Martinez for a late start, beginning after 6pm. She was assigned three sections – 17, 37, and 40. She earned $60.66.

32. That same night, Kimberly accused Ms. Martinez of giving away or stealing food – a half dozen biscuits. Ms. Martinez showed Kimberly where she had accurately rung up the biscuits.

33. On September 25, 2019, Ms. Martinez was assigned three sections – 17, 37, and 40. After checking the computer and learning she'd only earned $48 so far, Ms. Martinez asked for more tables. But Ms. Martinez's sections remained mostly empty. She earned $52.37.

34. During the morning on September 26, 2019 Ms. Martinez texted Dahlke to inform him of her low earnings. During her shift that night, she was assigned three sections 2, 3, and 4. She earned $55.70. That evening Jason told Ms. Martinez she had to write any issue she had on a Statement form before she would be allowed to check out.

35. On September 27, 2019, Ms. Martinez texted Dahlke to report a consecutive day of low wages and that the hosts were seating mainly 2-persons

parties in her sections. He responded by calling Ms. Martinez and telling her not to text him.

36. On October 10, 2019, Robert and Jason wanted to see Ms. Martinez at the start of her shift at table #15. Robert informed Ms. Martinez that after he told her she was all set and could check out at the end of a previous shift, he claimed that realized after Ms. Martninez had left the premises that Ms. Martinez allegedly owed $53.00.

37. Ms. Martinez denied owing $53 and provided copies of the receipts from the order. Neither manager brought up the issue again.

38. On November 3, 2019, Ms. Martinez was written up by Kimberly for allowing some cheese from a container to fall in the trash. Kimberly admitted that Ms. Martinez was not trained on the techniques for this side work. Nevertheless, Kimberly said Ms. Martinez should use common sense. Ms. Martinez further defended her actions; because, in addition to duties as a server she was rushing as a result of being given two side job assignments.

39. On November 4, 2019, Ms. Martinez texted Dahlke, "I need to inform you that the sexual conversations the servers have at work is constant and very disrespectful."

40. Dahlke responded to Ms. Martinez not to text his personal number but to call him on a "407" number.

41. On November 6, 2019, Ms. Martinez responded to Dahlke's text asking for the full "407" number, because she was unaware of such a number.

42. Dahlke responded to Ms. Martinez's text reiterating for her not to text him and instructing her to contact Jason, the restaurant's GM, and he would address her concerns.

43. Shortly thereafter, in November 2019, when Defendant failed to address her concerns and her working conditions continued to be intolerable, Ms. Martinez felt compelled to discontinue her employment with Defendant.

44. Subsequently, Ms. Martinez filed a charge of discrimination based on sex and retaliation with the Equal Employment Opportunity Commission ("EEOC").

45. The EEOC closed its file on Ms. Martinez's charge and issued a Dismissal and Notice of Suit Rights to Plaintiff on January 7, 2020. See **Exhibit 2**.

46. As result of the unlawful actions of Defendants, Ms. Martinez was repeatedly harassed, embarrassed, and her earning potential, wages were significantly hindered; Ms. Martinez has and will in the future experience substantial emotional distress, humiliation, loss of reputation and mental and physical anguish.

**COUNT I- SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

47. Martinez incorporates the above allegations as though fully stated herein.

48. Defendant is an "employer" within the coverage of Title VII of the Civil Rights Act of 1964 ("Title VII").

49. Martinez is an "employee" within the coverage of Title VII.

50. Defendant violated Section 703 of Title VII by tolerating and promoting hostile work environment of severe and pervasive sexual harassment.

51. As a direct and proximate result of Defendant's wrongful and unlawful conduct, Plaintiff has sustained damages, including emotional distress.

## COUNT II- RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

52. Martinez incorporates the above allegations as though fully stated herein.

53. Defendant is an "employer" within the coverage of Title VII of the Civil Rights Act of 1964 ("Title VII").

54. Martinez is an "employee" within the coverage of Title VII.

55. Defendant violated Section 704 of Title VII by limiting Ms. Martinez's earning potential/wages after she brought multiple internal complaints of sexual harassment.

56. Defendant, through its agents and employees, made Ms. Martinez' working conditions so intolerable that she felt compelled to leave her job.

57. As a direct and proximate cause of Defendant's wrongful and unlawful conduct, Ms. Martinez has sustained damages including, but not limited to, loss of income and emotional distress.

### COUNT III VIOLATION OF MICHIGAN WHISTLEBLOWERS PROTECTION ACT

58. Martinez incorporates all of the above allegations as though stated in full herein.

59. At all times relevant to this matter, Red Lobster was Ms. Martinez's employer; and Jason, Kimberly, and Robert, Debbie, and Mike were agents of Red Lobster employed as managers and backhouse kitchen staff, respectively, at the Red Lobster location where Ms. Martinez was employed as the term "employer" is defined in Michigan's Whistleblowers Protection Act ("WPA").

60. Ms. Martinez engaged in activity protected by the WPA when she reported to the company's 1-800 reporting line and to Dahlke the incidents of sexual harassment and retaliation.

61. Ms. Martinez also engaged in protected activity when she participated in an investigation with Employee Relations.

62. Defendant employer were aware of Ms. Martinez's protected activity before subjecting her to adverse employment actions.

63. Defendant harassed, embarrassed and limited Ms. Martinez's earning potential/wages because she engaged in activity protected under the WPA.

64. Defendant, through its agents and employees, made Ms. Martinez' working conditions so intolerable that she felt compelled to leave her job.

65. As a result of the defendant employer's unlawful conduct under the WPA, Ms. Martinez has suffered all the injuries and damages as described in paragraph 48, above.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests judgment against Defendant as follows:

1. Legal relief:

   a. a judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled

   b. compensatory damages in whatever amount she is found to be entitled

   c. punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay

   d. an award of interest, costs, and reasonable attorney fees

2. Equitable relief:

   a. an order reinstating Plaintiff to the position she would have held if there had been no discrimination and retaliation by Defendant

   b. an injunction prohibiting any further acts of retaliation or discrimination

   c. an award of interest, costs, and reasonable attorney fees

   d. whatever other equitable relief appears appropriate at the time of trial

Plaintiff further requests any such other relief as the Court deems just and equitable.

                                             Respectfully Submitted,
Law Office of Barbara A. Patek.
P.L.C. (limited appearance)

By:   s/ Barbara A. Patek
Barbara A. Patek (P34666)
(limited appearance on behalf of pro se Plaintiff, Cassie Martinez)
27 E. Flint Street, Suite 2
Lake Orion, MI 48326
(313) 410-1979 (cell)
pateklaw@gmail.com
In her Capacity as Director Federal Pro Se Legal Assistance Clinic
proseclinic@udmercy.edu

Dated: April 6, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSIE MARTINEZ,

    Plaintiff,

v.

RED LOBSTER HOSPITALITY LLC,
A Florida Corporation,

    Defendant

Case No.

Hon.
United States District Judge

Magistrate Judge

---

Cassie Martinez
20245 Sorrento
Detroit, MI 48235
734-334-8771
Plaintiff – *Pro se*
By: Law Office of Barbara A. Patek.
P.L.C. (Limited Appearance,
Pursuant to Court Order)
Barbara A. Patek (P34666)
27 E. Flint Street, Suite 2
Lake Orion, MI 48326
(313-410-1979- cell)
pateklaw@gmail.com
In her Capacity as Director
Federal Pro Se Legal Assistance Clinic
proseclinic@udmercy.edu

---

## DEMAND FOR JURY TRIAL

Plaintiff pro se, Cassie Martinez demands a trial by jury as to all claims, defenses and issues in this matter.

|  |  |
|---|---|
|  | Respectfully Submitted,<br>Law Office of Barbara A. Patek.<br>P.L.C. (limited appearance) |
| By: | s/ Barbara A. Patek<br>Barbara A. Patek (P34666)<br>(limited appearance on behalf of pro se Plaintiff, Cassie Martinez)<br>27 E. Flint Street, Suite 2<br>Lake Orion, MI 48326<br>(313) 410-1979 (cell)<br>pateklaw@gmail.com<br>In her Capacity as Director Federal Pro Se Legal Assistance Clinic |
| Dated: April 6, 2020 | proseclinic@udmercy.edu |

**NOTICE OF LIMITED SCOPE ASSISTANCE**

This complaint and jury demand were drafted or partially drafted with the assistance of a lawyer licensed to practice in the State of Michigan, pursuant to MRPC 1.2(b). These documents were prepared with the assistance of the Detroit Mercy Law Pro Se Legal Assistance Clinic, Theodore Levin U.S. Courthouse, Room 1044, 231 W. Lafayette Blvd., Detroit, MI 48226, Tel: 313-234-2690.